[Crim. No. 284.   Fourth Appellate District.—March 16, 1935.]

## THE PEOPLE, Respondent, v. JAMES HERSHEL WALKER, Appellant.

Wilmer Breeden for Appellant.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The appellant Walker, R. A. Skeels and R. F. Lemon were jointly charged with the crime of grand theft committed by taking a Ford coupe and, in a second count, with taking a Chevrolet coach. Prior convictions charged against each defendant were respectively admitted. While his codefendants were convicted on both counts the appellant was convicted on the second charge only. This is an appeal from the judgment entered against him.

The Chevrolet car in question was stolen in the city of San Diego between 5:30 and 9:30 P. M. on the evening of October 29, 1934. Somewhere around 7 o'clock on that evening two boys observed two men fixing the hinges on the doors of a private garage in the rear of a vacant house which had been unoccupied for at least a year. One of the boys held a flashlight for the men so they could see to put in some screws, and at this time he "went a little ways in" the garage and saw a Chevrolet coach. He later saw this car when the officers came to the garage on November 1st. At the trial this boy identified Lemon as one of the men he saw that night, and while he thought the appellant was the other he was not certain of this. Between 4 and 5 o'clock on the afternoon of November 1, 1934, these boys saw the appellant and his codefendants enter this garage and saw one of them take a green tool kit from a Ford coupe parked in the alley and carry it into the garage. They noticed that all three of the men were wearing gloves, that the garage door was kept shut and they heard sounds "like somebody hitting something" coming from the garage. They reported the matter to the police and several officers arrived within a few minutes.

These officers found all doors to the garage locked on the inside and after gaining admittance they found the three men with the stolen Chevrolet referred to. One wheel had been taken off, one side of the hood was up, the engine number was nearly obliterated showing fresh file-marks, fresh filings were directly underneath the number and a file was laid against the fender on that side, with numerous other tools scattered around. A false and forged registration certificate was in the car and there were two license plates which, it developed, had been taken from another car in another part of the city. The entire locking mechanism had been taken out of the switch and there was a box with wires attached thereto, known as a ''hot shot'' or coil jumper, which is used in driving away an automobile when the ignition is locked. The Ford parked in the alley was the stolen car involved in the first count of the complaint and after the officers arrived Skeels took a tool which he had in his hands to the Ford and placed it therein and took his coat therefrom. The wheels on that Ford had been changed and replaced with wheels of another color and the engine number thereon had been completely changed, as had also the license plates and the registration slip. In that car was also found a complete set of dies appropriate for stamping such engine numbers on an engine after the original numbers have been removed. While the numbers on both of these engines had been removed the cars were fully identified by secret numbers placed therein by the manufacturers.

While the explanations made by the appellant and his co-defendants conflicted with each other and each was self-contradictory in many respects, their general story is as follows: Skeels, who had rented this garage under an assumed name shortly before this occurrence, testified that on October 29th a man whom he had never seen before asked him where he could rent a garage; that he told him he could use this garage and gave him a key; that on November 1st this man employed him to fix a spring in the knee action of the car; that he was not a mechanic and was ill at the time; that he employed the appellant to assist him in making this repair; and that while they were doing so the police arrived. The appellant testified that Skeels asked him to help him do this work, telling him there was some-

thing in it for both of them, and that they started the work about 4 o'clock in the afternoon. He also testified that he was not a mechanic and knew nothing about this sort of work. Lemon testified that he merely dropped in to watch because he knew the other two would be working there.

■ The first point raised is that the evidence is not sufficient to support the judgment, it being argued that there is nothing to indicate guilt on the part of the appellant except the fact that he was present in the garage; that the garage had been leased by Skeels and that, therefore, the appellant was not in possession of the car; and that his explanation of his presence there is so reasonable that it removes any possible inference of guilt. The facts above set forth are a sufficient answer to these contentions and, with the reasonable inferences therefrom, amply support the verdict and judgment. Under the circumstances, the fact that the jury found itself unable to accept the appellant's explanation is not surprising.

It is next urged that the court erred in denying a motion for a new trial. This is based upon the proposition that the evidence is not sufficient to sustain a conviction and requires no further consideration.

■ The refusal to give a certain instruction at the request of the appellant is assigned as error. The instruction related to the matter of presumptions and the jury was fully and completely instructed on that subject. Nor can it reasonably be supposed that the instruction, if given, could have had any effect on the verdict. The appellant also takes one clause from another instruction and argues that it amounts to a direction to find the appellant guilty. Taken as a whole, the instruction not only was proper but was in favor of the appellant, and no reasonable juror could read into the language used the meaning now assigned to it by the appellant.

From a reading of the entire evidence we are unable to see how the jury could have reached any other conclusion and we are far from convinced that a miscarriage of justice has occurred.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.